**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMIE M. THOMAS,** )<br>704 Williams Walk Way )<br>Severn, MD 21144 )<br>)<br>     Plaintiff, )<br>)<br>  v. )<br>)   Civil Action No. _____<br>**DISTRICT OF COLUMBIA** )<br>)<br>     Defendant. )   **JURY TRIAL DEMANDED**<br>**Serve:** )<br>)<br>**NEIL A. STANLEY, ESQ., DIRECTOR** )<br>**DISTRICT OF COLUMBIA DEPARTMENT** )<br>**OF YOUTH REHABILITATION SERVICES** )<br>450 H Street, NW )<br>Washington, DC 20001 )<br>)<br>**VINCENT C. GRAY** )<br>**MAYOR** )<br>**DISTRICT OF COLUMBIA** )<br>1350 Pennsylvania Avenue, NW )<br>Washington, DC 20004 )<br>)<br>**IRVIN B. NATHAN** )<br>**ATTORNEY GENERAL** )<br>**DISTRICT OF COLUMBIA** )<br>**OFFICE OF THE ATTORNEY GENERAL** )<br>441 4th Street, NW )<br>Washington, DC 20001 )<br>)<br>)||

## **COMPLAINT**

1. Plaintiff Jamie M. Thomas a.k.a. Ayo Thomas ("Plaintiff" or "Ms. Thomas") brings this action for damages based on the denial of her rights under the Federal Family

Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and the District of Columbia Family Medical Leave Act, DC Code 32-501 *et seq*. ("DCFMLA").

2. Defendant, the District of Columbia, illegally and wrongfully terminated or discharged Ms. Thomas in violation of the federal and DC FMLA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331; the federal Family and Medical Leave Act, 29 U.S.C. § 2617; and the District of Columbia Family and Medical Leave Act, D.C. Code 32-510.

4. This Court is the proper venue pursuant to 28 U.S.C. § 1391 in that Defendant, the District of Columbia government, illegally and wrongfully terminated Ms. Thomas and Defendant is headquartered in the District of Columbia.

## PARTIES

5. Ms. Thomas worked for the District of Columbia government at all times relevant to this cause of action. Ms. Thomas was employed with the District of Columbia's Department of Youth Rehabilitation Services ("Defendant" or "DYRS"). DYRS is an executive branch agency of the District of Columbia government.

## FACTS

6. The averments set forth in the foregoing paragraphs are adopted and incorporated herein by reference.

7. Ms. Thomas began her professional career with the District of Columbia government on or about November 24, 2008 as a full-time Supervisory Management Liaison Specialist, MS-301-13, for the DC Office of the State Superintendent of Education Office ("OSSE"). During her three year tenure with OSSE, Ms. Thomas was rated as

a "Valued and Highly Effective Performer." Ms. Thomas has significant experience as a Human Resource professional, including recruitment and retention, conflict resolution, labor and employee relations, payroll, supervisory training and management coaching. Ms. Thomas collaborated with senior management at OSSE to conduct Human Resource strategic planning to support and further organizational goals. One such example was Ms. Thomas' work launching an E-Performance and Employee Self-Service program for OSSE's transportation workforce of 1,800 employees. Ms. Thomas also ensured that all transportation employees were suitable for employment under the Child Youth Safety & Health Omnibus Amendment Act ("CYSHA") and I-9 immigration verifications. Ms. Thomas additionally was responsible for implementing a Management Training Series which reduced the agency's turnover rate by 60% within a 120 day period. Ms. Thomas was highly recognized amongst her peers as an effective leader within DC Government.

8. To further her professional career, in December 2011, Ms. Thomas accepted a full-time position as a Supervisory Management Liaison Specialist, MSS-0301-15, with the District of Columbia, Department of Youth Rehabilitation Services. The effective date of Ms. Thomas appointment to DYRS was January 15, 2012.

9. There was no break in Ms. Thomas employment with the District of Columbia and her service with the District of Columbia government was continuous.

10. While employed with Department of Youth Rehabilitation Services, Ms. Thomas aggressively recruited fifty (50) Youth Development Representatives so that the Agency could meet Court ordered requirements and Agency strategic goals within a ninety (90) day time period. Ms. Thomas additionally successfully implemented and

developed a Labor Relations Tracking Report, an Agency Position Management Report, Personnel Request Forms to track day-to-day actions and an HR Data Tracking System through a Quickbase tool.  These reports and forms greatly supported and assisted Agency management and leadership in supervising staff and addressing personnel issues.

11. In approximately August 2012, Ms. Thomas began to experience severe and excruciating abdominal and pelvic pain.

12. As a consequence of her severe pain, Ms. Thomas went to a physician and was subjected to medical testing, a CT scan, to determine the cause of her abdominal and pelvic pain.

13. The results from Ms. Thomas' medical test revealed that she had Fibroid Tumors. Fibroid Tumors are generally described as noncancerous growths of the uterus that often appear during a woman's childbearing years.  Women who have Fibroid Tumors exhibit symptoms such as abdominal and pelvic pain, heavy menstrual periods, prolonged bleeding, and increased urination.   Ms. Thomas experienced symptoms from having Fibroid Tumors, including but not limited to, intense abdominal pain, pelvic pain, fatigue, severe bleeding, inability to focus on tasks, slowed pace in completing tasks, and difficulties in walking.

14. After Ms. Thomas learned of her diagnosis of Fibroid Tumors, she disclosed the medical condition to Regina Youngblood, Deputy Director of Operations for the Department of Youth Rehabilitation Services.

15. As a result of the pain and limitations caused by Fibroid Tumors, on or about September 26, 2012, Ms. Thomas attended an appointment with her physician, Dr. Maureen Grudy, MD.

16. Dr. Grudy, thereafter, scheduled Ms. Thomas for a myomectomy procedure on November 8, 2012.  A myomectomy is generally a laparoscopic surgical procedure used to remove fibroids, the recovery time can range from approximately one to six weeks and several follow-up post-operative physician visits are necessary.  It is recommended as a reasonable treatment option when uterine fibroids cause symptoms and pain that affect the quality of the patient's life.

17. On September 26, 2012, Ms. Thomas had Dr. Grudy complete and sign a written notification of the scheduled surgery, including the expected incapacity time period and post operation plans for recovery, to be submitted to DYRS. Dr. Grudy provided this information using the D.C. Department of Human Resources, Medical Certification.

18. In the written medical certification form, Dr. Grudy stated that a CT scan indicated that Ms. Thomas had fibroids and pelvic pain that began approximately August 23, 2012.

19. Dr. Grudy also stated in the medical certification that Ms. Thomas was scheduled for a myomectomy on November 8, 2012; Ms. Thomas would be incapacitated for six (6) weeks after the scheduled surgery; and she would need 1-2 follow-up visitations or post operation visits.

20. On September 27, 2012, Dr. Grudy sent DYRS a facsimile of the completed Medical Certification form that provided Ms. Thomas' medical information, including the scheduled surgery, expected incapacity time period, and post operation recovery plan.

21. On October 1, 2012, DYRS sent Ms. Thomas a letter acknowledging receipt of the September 27, 2012 written request to take medical leave under DCFMLA.

22. In the October 1, 2012 letter, DYRS approved Ms. Thomas' request for DCFMLA medical leave. Specifically, DYRS approved Ms. Thomas for Intermittent Leave as medically necessary from September 27-November 7, 2012 and for continuous leave from November 8-December 31, 2012. DYRS approved Ms. Thomas to return to work on January 2, 2013. DYRS also explained that Ms. Thomas had a right under DCFMLA for up to 16 weeks of unpaid leave in a 24-month period.

23. Additionally, District of Columbia government employees are also covered by the federal Family and Medical Leave Act which provides for up to 12 weeks of unpaid leave in a 12-month period.

24. On October 29, 2012, Ms. Thomas had a meeting with Ms. Youngblood.

25. During the course of the October 29, 2012 meeting, Ms. Youngblood informed Ms. Thomas that she should seek employment elsewhere while absent using approved FMLA medical leave, inferring that Ms. Thomas would not be allowed to continue her job with DYRS after her approved leave.

26. Astonished by Ms. Youngblood's statement, Ms. Thomas posed questions to clarify Ms. Youngblood's intentions to possibly terminate her, including asking Ms. Youngblood if she would receive a termination letter after January 2013. Ms. Thomas' approved medical leave was scheduled to end December 31, 2012. Ms.

Youngblood did not expound on her intentions to terminate Ms. Thomas and provided no additional information for the duration of the meeting on October 29.

27. On November 1, 2012, Ms. Youngblood met with Ms. Thomas to make the October 29 conversation "more formal" and provided Ms. Thomas with a Notice of Termination letter.

28. The Notice of Termination letter was signed by Neil Stanley, Director; hand-delivered to Ms. Thomas by Regina Youngblood. Ms. Thomas and Ms. Youngblood signed an Acknowledgment of Receipt of the termination letter.

29. The written Notice of Termination letter, issued to Ms. Thomas, stated that her termination would be effective by close of business Friday, November 16, 2012. Ms. Thomas' effective termination date was set to interfere with her use of approved continuous FMLA leave. On the date that Ms. Thomas received the written Notice of Termination letter, she had already been approved for intermittent FMLA leave.

30. During the course of the November 1, 2012 meeting, Ms. Thomas immediately expressed her concern about being terminated while using her approved FMLA leave. Specifically, Ms. Thomas asked whether the law permits her termination under FMLA.

31. During the same November 1, 2012 meeting, Ms. Youngblood informed Ms. Thomas that DYRS could terminate her and said she would provide Ms. Thomas with the regulation. No such regulation to support DYRS' termination was provided to Ms. Thomas.

32. During the same November 1, 2012 meeting, Ms. Thomas disclosed to Ms. Youngblood that she was upset by the decision to terminate her employment and

believed that DYRS, by terminating her, was effectively denying her the use of approved FMLA leave and retaliating against her for attempting to exercise her FMLA rights.

33. During the same November 1, 2012 meeting, and after the decision had been made to terminate Ms. Thomas, Ms. Youngblood told Ms. Thomas that she was not being terminated for cause.

34. However, Ms. Youngblood also told Ms. Thomas that she could have been terminated for cause and gave Ms. Thomas written documentation describing the results of an investigation of Ms. Thomas. The investigation that Ms. Youngblood referenced was conducted at a much earlier date; in fact, Ms. Youngblood received written notice of the investigation results on or about October 19, 2012.

35. Although an investigation of Ms. Thomas was conducted in response to a referral for investigation received by DYRS on July 18, 2012, DYRS did not terminate Ms. Thomas because of this investigation.

36. Ms. Youngblood knew about the results of the investigation since at least, October 19, 2012. However, Ms. Thomas was not terminated based upon the Report of Investigation Findings and DYRS did not terminate Ms. Thomas for disciplinary reasons.

37. On November 16, 2012, Ms. Thomas' effective termination date, she received a Post-Employment Benefits Entitlements letter informing her of benefits she may have been entitled to including severance pay, annual leave, sick leave, retirement benefits, life insurance, and health insurance.

38. The District of Columbia Code provides guidance for the District government in its decisions to terminate an employee holding the position of Management Supervisory Service. Specifically, "[i]n accordance with section 954 of the CMPA (D.C. Official Code §1-609.54(b)), an employee in the Management Supervisory Service shall be entitled to severance pay upon termination for non-disciplinary reasons."[1] DYRS does not provide severance pay for employees that are terminated for cause.

39. DYRS paid Ms. Thomas a severance. Specifically, DYRS provided her with severance pay at the following installment dates: December 14, 2012; December 28, 2012; January 11, 2013; January 25, 2013; and February 8, 2013. Ms. Thomas would not have been eligible for severance payments if she was terminated for cause or for disciplinary reasons.

40. The District of Columbia government interfered, restrained, prevented and denied Ms. Thomas from excising and/or attempting to excise her rights under the federal and DC FMLA by terminating her rather than allowing her to take her approved FMLA leave.

41. The District of Columbia government terminated Ms. Thomas in retaliation for excising and/or attempting to excise her right to take approved leave under the federal and DC FMLA.

---

[1] D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3 is also reference in the E-District Personnel Manual.

### Count I:  Violation of the Federal Family and Medical Leave Act ("FMLA") Interference and Retaliation Claim Against the District of Columbia

42. Ms. Thomas re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

43. Under the FMLA, an "eligible employee" is entitled to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1) (2013).

44. An "eligible employee" is one "who has been employed for at least 12 months by the employer with respect to whom leave is requested…for at least 1,250 hours of service with such employer during the previous 12-month period, [and] is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a) (brackets added).

45. At all times pertinent and relevant to this complaint, Ms. Thomas was an FMLA-eligible employee, as she had been employed by the District of Columbia since November 24, 2008 or almost four (4) years, without a break in employment or service, exceeding twelve (12) months worked.  Ms. Thomas held a full-time position for her entire employ with the District of Columbia and worked at least 1,250 hours during the twelve (12) months preceding the date of FMLA.

46. A city or town is considered a single public agency and, therefore, a single employer for purposes of determining employee eligibility under the FMLA. 29 C.F.R. § 825.108(c)(1).

47. The District of Columbia is subject to the requirements of the FMLA as a public, government agency.

48. A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care…or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

49. "Continuing treatment" includes "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves treatment two or more times, within 30 days of the first day of incapacity…by a health care provider…or treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." "[T]reatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(1)-(3).

50. Ms. Thomas' medical condition of Fibroid Tumors qualified as a serious health condition, as it prevented her from performing the functions of her job and included symptoms of intense abdominal pain, pelvic pain, severe bleeding, difficulties with walking, tiredness and fatigue, inability to focus on tasks, and slower pace and additional effort to complete tasks.

51. Ms. Thomas' medical condition of Fibroid Tumors required treatment that included a myomectomy scheduled for November 8, 2012; incapacity for six (6) weeks after the scheduled surgery; and she would need 1-2 follow-up visitations or post operation visits with a physician.

52. The District of Columbia approved Ms. Thomas for Intermittent Leave as medically necessary from September 27-November 7, 2012 and for continuous leave from November 8-December 31, 2012.

53. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c).

54. "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits…." 29 C.F.R. § 825.214.

55. The District of Columbia terminated Ms. Thomas effective November 16, 2012, while she was exercising her entitlements under FMLA leave. The District of Columbia restrained, denied, prevented and interfered with Ms. Thomas' rights and effective use of approved FMLA leave.

56. The District of Columbia terminated Ms. Thomas in retaliation for excising and/or attempting to excise her right to take approved leave under FMLA.

57. The District of Columbia did not have a legitimate business reason for its decision to terminate Ms. Thomas.

58. The District of Columbia provided Ms. Thomas with severance pay. Ms. Thomas would not have been eligible for severance payments if she was terminated for cause or for disciplinary reasons.

59. As a result of the District of Columbia's violations of FMLA, Ms. Thomas has suffered loss of employment and loss of wages and benefits. As a consequence of the Defendant's unlawful actions, Defendant is additionally liable to Ms. Thomas for

those damages as well as an additional amount as liquidated damages, attorneys' fees, the costs of litigation, and accrued interest.

### Count II:  Violation of the DC Family and Medical Leave Act ("DCFMLA") Interference and Retaliation Claim Against the District of Columbia

60. Ms. Thomas re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

61. At all times pertinent and relevant to this complaint, Ms. Thomas was a DCFMLA-eligible employee, as she had been employed by the District of Columbia since November 24, 2008 or almost four (4) years, without a break in employment or service, exceeding twelve (12) months worked.  Ms. Thomas held a full-time position for her entire employ with the District of Columbia and worked at least 1,000 hours during the twelve (12) months preceding the date of DCFMLA.

62. The District of Columbia is subject to the requirements of the DCFMLA as a public, government agency.

63. Ms. Thomas' medical condition of Fibroid Tumors qualified as a serious health condition, as it prevented her from performing the functions of her job and included symptoms of intense abdominal pain, pelvic pain, severe bleeding, difficulties with walking, tiredness and fatigue, inability to focus on tasks, and slower pace and additional effort to complete tasks.

64. Ms. Thomas' medical condition of Fibroid Tumors required treatment that included a myomectomy scheduled for November 8, 2012; incapacity for six (6) weeks after the scheduled surgery; and she would need 1-2 follow-up visitations or post operation visits with a physician.

65. The District of Columbia approved Ms. Thomas for Intermittent Leave as medically necessary from September 27-November 7, 2012 and for continuous leave from November 8-December 31, 2012.

66. The District of Columbia terminated Ms. Thomas effective November 16, 2012, while she was exercising her entitlements under FMLA leave.  The District of Columbia restrained, denied, prevented and interfered with Ms. Thomas' rights and effective use of approved DCFMLA leave.

67. The District of Columbia terminated Ms. Thomas in retaliation for excising and/or attempting to excise her right to take approved leave under DCFMLA.

68. The District of Columbia did not have a legitimate business reason for its decision to terminate Ms. Thomas.

69. The District of Columbia provided Ms. Thomas with severance pay.  Ms. Thomas would not have been eligible for severance payments if she was terminated for cause or for disciplinary reasons.

70. As a result of the District of Columbia's violations of DCFMLA, Ms. Thomas has suffered loss of employment and loss of wages and benefits.  As a consequence of the Defendant's unlawful actions, Defendant is additionally liable to Ms. Thomas for those damages as well as an additional amount as liquidated damages, attorneys' fees, the costs of litigation, and accrued interest.

**RELIEF SOUGHT**

**WHEREFORE**, Ms. Thomas respectfully requests this Court to award damages in an amount to be proved at trial, and that the Court further:

A. Enter judgment for Plaintiff against Defendant;

B. Declare that the conduct of Defendant is in violation of the federal FMLA and DCFMLA;

C. Award Ms. Thomas full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses, cash awards, loss of retirement savings and benefits, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

D. Award Ms. Thomas lost insurance benefits in either actual replacement cost for the insurance or expenses Ms. Thomas actually incurred that would have been covered under the former insurance plan;

E. Award an additional amount as liquidated damages;

F. Award Ms. Thomas pecuniary and out of pocket expenses;

G. Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions, as well as pre-judgment and post-judgment interest; and

H. Order such other equitable and legal relief as the Court deems necessary and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial for this action.

Dated: October 8, 2013

                                    Respectfully submitted,

                                    _____/s/_____
                                    Camilla C. McKinney, Esquire
                                    DC Bar #448776
                                    McKinney & Associates, PLLC
                                    1625 Prince Street, Suite 230
                                    Alexandria, VA 22314-2883
                                    (703) 717-9428 (Telephone)
                                    (877) 590-4777 (Facsimile)
                                    CMcKinney@DCEmploymentLawyer.com
                                    ***Attorneys for Plaintiff Jamie M. Thomas***